Argued June 16; affirmed June 29, 1943

# STATE INDUSTRIAL ACCIDENT COMMISSION
## v. EGGIMAN
(139 P. (2d) 565)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK and BRAND, Associate Justices.

*C. S. Emmons,* of Salem, (I. H. Van Winkle, Attorney General, C. L. Marsters, and Walter H. Evans, Jr.,

Assistant Attorneys General, on the brief) for appellant.

*Glen R. Jack,* of Oregon City (Butler & Jack, of Oregon City, on the brief) for respondent.

ROSSMAN, J. This is an appeal by the plaintiff, the State Industrial Accident Commission, from a judgment for the defendant entered in this action which was instituted by the commission for the purpose of recovering from the defendant, the alleged employer of Leonard Johnson, $1,096.85, being the sum which the plaintiff paid to Johnson on account of an injury which he suffered while helping to fell a tree upon land owned by the defendant.

It is agreed that the defendant had not notified the plaintiff, prior to Johnson's injury, that he (defendant) elected not to contribute to the industrial accident fund for the work in which Johnson was engaged at the time of his injury. It is also agreed that the defendant ordered felled the tree upon which Johnson was working at the time of his injury.

The plaintiff (appellant) presents only two assignments of error. The issues which they raise are: (a) Was Johnson the defendant's (respondent's) employee; and (b) was the business in which the defendant was engaged (1) logging; (2) work incidental to farming; or (3) both.

. The plaintiff, in seeking to hold the defendant liable for reimbursement to it for the sum it paid to Johnson, contends that at the time of Johnson's injury the defendant was engaged in two vocations: (a) General farming and dairying; and (b) the wood business: felling trees, cutting them into firewood and selling the latter. It further contends that at that time Johnson was the defendant's employee in the wood business.

The defendant, upon the other hand, contends that. (1) Johnson was not his employee, but was the employee of one Walter Hornshuh, who, as an independent contractor, was cutting about 100 cords of firewood for the defendant upon the latter's farm; and (2) the work in which Hornshuh was engaged on behalf of the defendant was within the purview of § 102-1727, O. C. L. A., which says:

"Farming, and all work incidental thereto, is a nonhazardous occupation * * *. Farming means the cultivating of land, dairy, * * * and operations incidental thereto; also, when incidental thereto, * * * land clearing with or without blasting, wood sawing, wood cutting, * * * whether or not such operations are carried on by the owner of the farm, the person operating it or by any other person. * * * None of the occupations enumerated by sections 102-1725 and 102-1736 shall be deemed hazardous when conducted by a farmer incidental to his farming operation."

Section 102-1725, O. C. L. A., says:

"The hazardous occupations to which this act is applicable are as follows: * * * (c) Logging, lumbering or * * *; * * * land clearing with blasting * * *."

Section 102-1736, O. C. L. A., which states the time when employers "subject to this act" must remit to the commission, has application to this case only in the event that the defendant's operations were nonagricultural.

The facts are free from dispute and present the situation which we shall now describe. Since 1904, with the exception of a five-year period, the defendant lived upon a tract of land comprising 92 acres which is situated about three miles from Oregon City. In 1926

he purchased the place. Fifty-five of the acres are in cultivation, 17 contain a stand of timber and the remainder is stump land. He owns 18 cows which he pastures upon this land. The findings of fact, referring to the time of Johnson's injury, say:

"Said defendant at said time was a farmer, and his principal occupation was farming and dairying."

We concur in that finding.

Since 1926 a neighboring farmer of the defendant, being the aforementioned Walter Hornshuh, annually cut for the defendant approximately 100 cords of wood off the defendant's land. He felled the trees and cut most of the wood into cordwood. The work was done in the winter months, and the following fall the defendant sold and delivered the cordwood to customers in Oregon City. Hornshuh cut some of the wood into 16-inch lengths; this was used by the defendant in his home. Generally, Hornshuh was compensated at the rate of $1.25 per cord. In the felling of the trees Hornshuh used a helper. In March, 1940, he secured the services of the aforementioned Leonard Johnson who lived with his parents upon an adjacent farm.

March 28, 1940, while Johnson was helping Hornshuh fell a tree he sustained the injury for which the plaintiff later paid him the sum which it seeks to recover from the defendant, $1,096.85. The payment was made pursuant to a claim which stated that the defendant was the employer and that the work consisted of "felling trees."

As trees were felled the defendant cleared the ground of all underbrush and sowed it with grass seed, thereby providing additional pasture for his cows. The defendant, in stating the reason for cutting the wood,

said: "The main reason was to get more pasture." He swore that "dairying and general farming" was the kind of work in which he was engaged, and added that he increased his dairying activities as he cleared the timber off more and more of his land. The following is taken from the testimony given by him upon cross-examination:

"Q. So in addition to your dairy business you did have a little wood business on top of it, didn't you?

"A. Yes, sir.

"Q. You kind of killed two birds with one stone, and thus got more land cleared and at the same time made a little money out of wood to help pay the taxes, is that about it?

"A. That is right."

We quote further from the record:

"The Court: What is your principal work out there?

"A. Right now it is dairying.

"The Court: Well, I mean when this matter happened and before,—prior thereto.

"A. Oh, I was cutting wood and hauling and farming.

"The Court: Well, now, was your principal business cutting and selling wood, or was it farming?

"A. Well, if we had a poor year, the wood was the best, and if you had a good year, the farming was the best. It depends on the crops.

\*　\*　\*

"The Court: 1940, yes. When this wood operation started that year and right back in '39 when this agreement was had, what was your principal occupation out there?

"A. Dairying."

We quote further from his testimony:

"A. Oh, I raised about five or six acres of wheat, and the balance was oats and vetch and a little corn and potatoes.

"The Court: Have any pigs?

"A. One or two, for my own use.

"The Court: Did you sell milk on the market?

"A. I had a retail route.

"The Court: Retail, you delivered milk from your cows?

"A. Yes.

"The Court: How much help did you have?

"A. One man."

The defendant testified that the profits from the wood which he annually sold did not afford his family a living, but that the proceeds of the wood and of his dairying and farming operations provided them not only with a living but also enabled him to pay the contract price of his land. Further, he testified: "I write life insurance on the side." The extent of his insurance activities is not disclosed by the record, and that phase of his occupation receives no mention in the briefs. We assume that his insurance business was small.

The appellant presents two assignments of error, but a determination in the defendant's favor of the second one will render consideration of the first unnecessary. The second assignment of error submits the issue as to whether or not the work which was in progress when Johnson was injured was hazardous within the contemplation of § 102-1727, O. C. L. A. We shall now consider the second assignment of error.

■■ The general words of § 102-1727 are: "Farming, and all work incidental thereto is a nonhazardous occupation." It is unnecessary to do more than take passing notice of the fact that the definitions employed

today of the word "farming" are comparatively new. A couple of centuries ago the words "farm" and "farming" had meanings very different from those of today. The word "farm" today signifies a piece of land used wholly or principally for agricultural purposes, and the word "farming" means the conduct of a farm. One of the prerogatives of a legislator is to make words obey him and accept any meaning which he chooses to impart to them. Availing themselves of that privilege, the legislature, through the enactment of § 102-1727, O. C. L. A., made the word "farming" mean:

> "The cultivation of land, dairying * * * and operations incidental thereto; also, when incidental thereto, * * * land clearing, * * * wood sawing, wood cutting, * * *."

The bronze figure of the pioneer, axe in hand, which adorns the dome of our state house is a daily reminder that our farms were carved out of the wilderness, in many instances out of the forest. Even today many farms contain a wooded tract which is frequently the source of the tax money. Those circumstances very likely persuaded the legislator to expand the meaning of the term "farming" so as to make it include the words previously quoted; that is, "land clearing, * * * wood sawing, wood cutting, * * *."

The plaintiff cites *Peterson v. State Ind. Acc. Comm.*, 140 Or. 326, 12 P. (2d) 564. However, it says of that decision: "We do not urge that the Court follow or overrule Peterson. We will be satisfied with a decision either way * * *." In the Peterson case, a firm of farmers, entitled Shumway Brothers, which was engaged in the stock raising business, hired an individual named Clarence Peterson to fell some trees and cut the timber into stovewood for use upon the

Shumway farm. While proceeding with his work Peterson sustained an injury. His application for compensation eventually yielded the decision now under review. The only substantial difference between that case and the one now before us is the absence from the Peterson case of any evidence showing that the timber was removed in order to increase the agricultural area. Seemingly, the Shumway Brothers cut the trees for the sole purpose of providing wood. We quote from the Peterson decision:

"We can not say that an employee engaged by a farmer for the sole purpose of felling trees and cutting them into stovewood, to be used by the employer on his farm, is employed to do work incidental to farming."

Two members of this court dissented from the decision and a third did not participate in it.

The Peterson decision quoted § 49-1815, Oregon Code 1930, which, as amended, is § 102-1725, O. C. L. A. The words quoted from that section were not altered by the amendments which were later made to other parts of the section and consist of the provision which classifies "logging" and "lumbering" as hazardous occupations. After making the quotation, the decision declared that the work in which Peterson was engaged at the time of his injury "was a logging operation" and that, therefore, § 49-1801 "automatically" subjected him to the Workmen's Compensation Act "unless he, or his employers had elected not to be subject to the act, * * * or unless the work he was engaged in is excluded from the operation of the act * * *." The expression of that conclusion was followed shortly by a quotation from § 49-1816, Oregon

Code 1930 (which, as amended, is now a part of § 102-1727, O. C. L. A.) and which says:

"Farming and all work incidental thereto * * * are nonhazardous occupations * * *."

That quotation was followed by another from § 49-1817, Oregon Code 1930, (which is now also a part of § 102-1727, O. C. L. A.) and which defines the word "farming." Then came the expression of this court's ultimate conclusion:

"We can not say that an employee engaged by a farmer for the sole purpose of felling trees * * * is employed to do work incidental to farming."

The Peterson decision would demand a holding that Johnson, at the time of his injury, was engaged in the hazardous work of logging, if the legislature has made no substantial change in the applicable statutes, and if this court, as now constituted, agrees with the Peterson decision.

Let us take note of two changes wrought to our Workmen's Compensation Act by the 1933 legislative assembly. It enacted chapter 59, page 68, of 1933 Session Laws, which says:

"* * * It is the purpose of this act that an occupation and all work incidental thereto and all workmen engaged therein shall be wholly subject to or wholly outside the provisions of this act."

That enactment was possibly prompted by the intimation made in the Peterson decision, that the Shumway Brothers, at the time of Peterson's injury, could have been deemed engaged in the nonhazardous business of farming, and also in the hazardous business of producing logs as a source of their farm's firewood. Without endeavoring to apply that statute to the facts before

us, we pass it by and proceed to chapter 116 of the 1933 enactments. We have already mentioned one of its effects; it combined § 49-1816, Oregon Code 1930, in altered form with a part of § 49-1817. Next, it added to the combined section a provision which was not previously a part of our laws. Chapter 116 is now § 102-1727, O. C. L. A. The part of § 49-1816 which is a section of § 102-1727 is the part which says that "farming and all work incidental thereto is a nonhazardous occupation." The part of § 49-1817 which was included in § 102-1727 is the phrase which defines farming as "the cultivation of land, dairying   *   *   *." The addition to the combined section follows:

> "None of the occupations enumerated by sections 102-1725 and 102-1736 shall be deemed hazardous when conducted by a farmer incidental to his farming operation."

Those words were manifestly intended to remove legislative support for any holding in future cases similar to that announced in the Peterson decision.

From the foregoing, it will be seen that, although the facts now before us are substantially similar to those in the Peterson case, material changes have been wrought in the controlling legislative enactments.

Before coming to a conclusion in the instant case, let us see what the courts of other states have done with facts similar to those before us.

In *Hagelstad v. Usiak,* 190 Minn. 513, 252 N. W. 430, the facts and issue were substantially the same as those before us. In holding that the cutting of the wood was incidental to farming, the decision said:

> "In this case relator was a farmer, and, so far as farming operations were concerned, persons employed therein were not covered by the Compensa-

tion Act. To be sure, relator could not support himself and family from the annual crops of his farm; there being only 12 acres under cultivation. But one starting as a farmer in a densely timbered country is nevertheless entitled to be regarded as a farmer even if at first he can obtain little by way of annual crops. He must have a home, and buildings for domestic animals, and the making use of timber on the land for this purpose must be considered part of farming. So also must be the clearing of the land of timber. If the timber to be cleared off is sawed into lumber or cut into cordwood, and the surplus not needed for use or for the improvement of the farm is sold, no one would say that the small farmer in the timbered country was departing at all from the occupation of farmer. The preparation of the surplus for sale and marketing the same would be but an incident of farming.  *   *   *  Necessity compels the small farmer who settles upon a timbered tract of land to resort to various expedients to subsist and develop the farm.  *   *   *  To magnify the incident that relator, in providing his own fuel, acquired a trifle too much timber stumpage, whereby he obtained some 80 cords more than immediately necessary, into an inference that he embarked in the fuel business, appears to us unwarranted. This surplus he turned over to his son who had loaned him some money to carry on the farm. To us, these 80 cords of wood appear a mere incident to his farming   *   *   *.''

From *Robinson v. Stockley,* 166 Tenn. 380, 61 S. W. (2d) 677, we quote:

"For many years he has cut and sold timber to various parties who were engaged in the lumber business at Cairo, Illinois, and Memphis, Tennessee. The purpose of cutting the timber was to get the valuable merchantable timber off the land with a view to putting the land in cultivation, and he has in the past years put into cultivation a large area

of land from which he had cut, removed and sold the timber \* \* \*; his principal occupation being that of a farmer.''

One of the defendant's employees was injured while helping to cut the timber. The court, in holding that the defendant was protected by the compensation act which exempted ''farm or agricultural laborers and employers thereof,'' said:

> ''It (the evidence) distinctly shows that the timber-cutting (while shown by the record to have run into large quantities from time to time) was incidental to the business or occupation of agriculture in which the defendant was engaged. He was not pursuing as an occupation the cutting and logging of timber.''

In *In Matter of McAllister v. Cobb*, 237 App. Div. 674, 263 N. Y. S. 349, the claimant was injured while cranking a farm tractor which was being used to furnish power for a woodsaw. His employer operated two farms. On the latter he used both the tractor and the woodsaw. The claimant, besides occupying a farm, worked around by the day for farmers in the community. The defendant sent his tractor, woodsaw and men, including the claimant, to the farm of a neighbor to saw the latter's firewood, and while there the claimant was injured. The value of the services which the defendant thus conferred upon his neighbor would be paid by return work. In holding that the claimant was not entitled to compensation, the court said:

> ''Upon the foregoing proof we are constrained to hold that at the time of the accident the employer was not engaged in the business of wood-sawing but in that of a farmer, and that the claimant was a farm laborer, within the meaning of the workmen's compensation law.''

From *Johnson v. Department of Labor and Industries,* 182 Wash. 351, 47 P. (2d) 6, we quote:

"The statute relied upon by appellant, Rem. Rev. Stat., § 7676 (a), Class 50-1, among other things, includes 'cutting wood and bolts' and prescribes an industrial insurance premium rate upon the payroll of such an industry. No premiums or assessments are prescribed for the farming industry or can be collected. It has not been classified as an extrahazardous occupation by the legislature * * *. The cutting of five or six trees into pulpwood cannot be said to be the principal industry of a farmer who cut the same for the primary purpose of clearing his land, although the trees were afterward sold for $2 per cord."

The decisions just reviewed were selected at random. Many more which cover a wide range of activities upon the part of farmers and their employees are the following: *Berry v. Department of Labor and Industries,* 11 Wash. (2d) 154, 118 P. (2d) 785, 140 A. L. R. 392, and annotation at page 399, especially at page 403; *Lowe v. North Dakota Workmen's Comp. Bureau,* 66 N. D. 246, 264 N. W. 837, 107 A. L. R. 973, and annotation at page 977, especially at page 982 and page 983; *Smith v. Jones,* 102 Conn. 471, 129 Atl. 50, 43 A. L. R. 952, and annotation at page 954; *Cook v. Massey,* 38 Idaho, 264, 220 P. 1088, 35 A. L. R. 200, and annotation at page 208, especially at page 211; *Industrial Commission v. Shadowen,* 68 Colo. 69, 187 P. 926, 13 A. L. R. 952, and annotation at page 955; *Miller & Lux v. Industrial Acc. Comm.,* 179 Cal. 764, 178 P. 960, 7 A. L. R. 1291, and annotation at page 1296, especially at pages 1297 and 1298.

■ We are clearly satisfied that the work which the defendant was conducting when Johnson was injured, that is, the clearing of the land so as to extend the de-

fendant's pasture, was farming work. The language of § 102-1727, which includes "land clearing * * * wood sawing, wood cutting," when incidental to farming within its compass, affords no room for any other conclusion. The mere fact that the defendant intended to sell some of the wood, which would be obtained from the tree which Hornshuh and Johnson were felling, can not warrant a different conclusion. Whether the defendant kept the wood or sold it, nevertheless, the fact was that the two men were clearing land; they were sawing and cutting wood. The fact that the defendant intended to sell the wood the following fall, likewise could not demand a different result. The sale of a hundred cords of wood would be only incidental to the farming which was the defendant's principal business. We saw that § 102-1727 includes in the ambit of farming "all work incidental thereto."

It is true that under the conclusion just announced, a farm hand, who sustains an injury under circumstances similar to those which bring an injury to a lumberjack, will receive no compensation from the industrial accident fund, although the logger will be compensated, but, normally, where there is a reasonable basis for classification disparity in treatment is a legislative matter in which the courts have no voice. The inequality in treatment to which we just adverted has received the attention of the courts, but has never been deemed a basis for holding a workmen's compensation act unconstitutional: *Cook v. Massey,* supra, and *Miller & Lux v. Industrial Acc. Comm.,* supra. In the annotation to the latter decision, at page 1296, the editor says:

"The exclusion of farm laborers from the operation of the statutes does not render them unconstitutional as class legislation."

From the foregoing it follows that we will not adhere to *Peterson v. State Ind. Acc. Comm.,* supra. We believe that amendments made to the statutes quoted in that decision demand a different result. We are satisfied that felling trees and clearing ground so as to extend agricultural areas fall within the scope of farming and are not deemed by our workmen's compensation act hazardous occupations.

Having arrived at the foregoing conclusion, it is unnecessary for us to consider the first assignment of error.

The judgment of the circuit court is affirmed.