Argued January 11, reversed April 24, 1963

# MANNING *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

### 380 P. 2d 989

*Gerald C. Knapp,* Assistant Attorney General, Portland, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, and Ray H. Lafky, Assistant Attorney General, Salem.

*Berkeley Lent,* Portland, argued the cause for respondent. With him on the brief were Peterson, Lent & Paulson, and Charles Paulson, Portland.

Before MCALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

McALLISTER, C. J.

Plaintiff, while employed as a laborer by a landscape gardener, sustained a personal injury by accident arising out of and in the course of his employment. Plaintiff's claim for compensation under the Workmen's Compensation Law[1] was denied by defendant, State Industrial Accident Commission, on the ground that plaintiff was not covered under that act. Plaintiff appealed to the circuit court which reversed the commission and directed it to allow plaintiff's claim. The defendant appeals.

Whether plaintiff was covered under the Workmen's Compensation Law at the time of his injury depends on whether his employer was engaged in the non-hazardous occupation of landscape gardening or the hazardous occupation of "land clearing."

---

[1] ORS 656.002 to 656.590 is referred to herein as the "Workmen's Compensation Law" and as the "act".

Defendant's brief contains a statement of facts which was accepted by the plaintiff. From that statement we quote the following: "For approximately fourteen years prior to January 3, 1961, William F. Linton, plaintiff's employer and intervener herein, was engaged in the business of landscape gardening for private home owners in Portland, and vicinity. This work consisted primarily of planting, mowing, and caring for lawns, planting, moving, and trimming shrubs, spading and raking the ground in and around flower beds, and cleaning up trash and debris from the yards of private residences. Hand tools only were used as aids in performing the yard work.

"Mr. Linton did yard work for a number of regular customers and charged by the hour for his services. Occasionally he would hire additional help as laborers and would pay such help on an hourly basis, making a differential in the hourly charge to the tenant of the property. The plaintiff in this case had been hired by Mr. Linton in June, 1960, and had assisted him in performing the yard work for his several customers.

"Dr. Howard C. Emmerson, residing at 7285 S. W. Northvale Way in the Raleigh Hills district west of Portland was one of Mr. Linton's customers and had authorized Mr. Linton to utilize his spare time to clean up the trash, debris, brush and undergrowth on the unimproved back part of the lot on which his residence is located. This back yard area consisted of some 20,000 square feet, and had growing thereon, in addition to the undergrowth, a number of fir, maple and cedar trees. Also, a number of wild cherry saplings had sprung up. These ranged in size from three inches to six inches in diameter at the base and between 15 feet and 25 feet in height.

"In cleaning up the back yard area for Dr. Em-

merson, the instructions were not to disturb the large trees or the native ferns and some other bushes, but in cleaning out the underbrush [Mr. Linton] was to take out the wild cherry saplings and grub out the roots. Dr. Emmerson's plan was to have gravel paths running through the yard, to plant shrubs throughout the area, to clear a space for his children to play, and for a small garden plot.

"About the middle of December, 1960, Mr. Linton and the plaintiff herein started the clean-up work on Dr. Emmerson's back yard and had in the process cut out some 15 to 18 of the cherry saplings. A couple of years prior to January 3, 1961, the Portland General Electric Company, in clearing a right of way for its power lines along the roadway paralleling the back of Dr. Emmerson's lot, had cut out two or three large trees, leaving the stumps. One of the stumps from a maple tree, approximately 12-inches to 18-inches in diameter, remained on Dr. Emmerson's property, and on January 3, 1961, in the absence of Mr. Linton, plaintiff was chopping around the roots of this stump with an axe when he accidentally severed the tips of the ring and middle fingers of his left hand."

■ Our Workmen's Compensation Law is designed primarily to cover the workmen of employers engaged in hazardous occupations listed in the act. The controlling factor is the occupation of the employer.[2]

Landscape gardening is not one of the hazardous occupations listed in the act. ORS 656.084. It follows that if plaintiff's employer while cleaning up the rear of the Emmerson lot was engaged in his usual occu-

---

[2] ORS 656.082. "If an employer is engaged in any of the occupations defined by ORS 656.084 or 656.086 as hazardous, the workmen employed by him in such occupations are deemed to be employed in a hazardous occupation but not otherwise."

pation of landscape gardening, plaintiff was not covered by the act. In *Butler v. State Ind. Acc. Com.,* 212 Or 330, 334, 318 P2d 303 (1958), we said:

> "* * * We think that the language of the pertinent sections of the Act makes it clear that it is the occupation of the employer, not the employee, which is the determining factor here."

See to the same effect *Bennett v. State Ind. Acc. Com.,* 203 Or 275, 279 P2d 655, 279 P2d 886 (1955).

Plaintiff argues, however, that Mr. Linton in cleaning up the Emmerson back yard had departed from his usual occupation of landscape gardening and had engaged in the separate occupation of land clearing, which is listed as a hazardous occupation in ORS 656.084, the pertinent portion of which reads as follows:

> "The hazardous occupations to which ORS 656.002 to 656.590 are applicable are as follows:
>
> "* * * * *
>
> "(3) Logging, lumbering or shipbuilding operations; engineering works, land clearing, well drilling, stevedoring or longshoring."

■ We have carefully examined the record in this case and can find no substantial evidence to support the finding of the trial court that at the time of plaintiff's injury his employer was engaged in the separate occupation of land clearing. Mr. Linton was called as a witness by the plaintiff and gave the only evidence concerning his occupation. Linton testified that he had landscaped the front part of Emmerson's lot and had thereafter taken care of it nearly every week. He testified that his assignment to landscape the rear of the lot was all part of "one continuous operation." That testimony was undisputed.

Plaintiff had been employed by Linton for about a year. No additional help was engaged in the landscaping of the Emmerson lot. Only hand tools were used. It will be noted that ORS 656.084 (3) classifies land clearing with logging, lumbering and other occupations requiring heavy machinery and equipment. There is little, if any, similarity between those occupations and the manual labor being performed with hand tools by plaintiff and his employer—work of the kind that is not uncommonly performed by the average householder in landscaping his own residential lot.

It would not benefit plaintiff to find, if we could find from the evidence, that the landscaping of the Emmerson lot *if undertaken as a separate occupation* was land clearing. We would have to find further that the work was not being performed as an incidental part of Linton's occupation of landscape gardening. In 1932 this court decided *Peterson v. State Ind. Acc. Comm.,* 140 Or 326, 12 P2d 564, in which the court said, at 140 Or 330:

> "We cannot say that an employee engaged by a farmer for the sole purpose of felling trees and cutting them into stovewood, to be used by the employer on his farm, is employed to do work incidental to farming."

As a result of that opinion the farmer's employees engaged in wood cutting were covered under the act, while his employees engaged in normal farm work were not covered.

■ The following year the legislature amended § 49-1810, Oregon Code 1930, by adding the following sentence: "It is the purpose of this act that an occupation and all work incidental thereto and all workmen

engaged therein shall be wholly subject to or wholly outside the provisions of this act." That amendment, which is now codified as ORS 656.022 (4), was intended to prevent a non-hazardous occupation from being converted to a hazardous occupation by work possibly hazardous by itself, but nevertheless only incidental to a non-hazardous occupation. See *State Ind. Acc. Com. v. Eggiman,* 172 Or 19, 139 P2d 565 (1943). By the same token the amendment was designed to prevent a hazardous occupation from being converted to a non-hazardous occupation by work non-hazardous by itself, but nevertheless only incidental to a hazardous occupation.

There is no testimony which would support a finding that the cleaning up of the rear of the Emmerson lot was a separate occupation. We think it clear that the work in question was no more than an incidental part of the non-hazardous occupation of landscape gardening in which Linton was regularly engaged.

The judgment of the lower court is reversed.