# OREGON OYSTER COMPANY
*v.*
# DEPARTMENT OF REVENUE

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

George H. Hoselton, Litchfield, Macpherson & Carstens, Newport, represented plaintiff.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered January 5, 1978.

CARLISLE B. ROBERTS, Judge.

Plaintiff appealed from defendant's Order No. VL 76-321, dated May 5, 1976, relating to the assessment, as of January 1, 1975, of certain personal property in Lincoln County, Oregon. The issue presented is whether the personal property (described as Lincoln County Assessor's Account No. 335, Code 280) is eligible for the partial property tax exemption provided by ORS 310.608 for certain inventory, defined in part as "farm machinery used in the planting, cultivating, or harvesting of farm crops, * * *."

Plaintiff is a commercial producer of oysters in Yaquina Bay. Its operation, which was referred to by its witnesses as an "oyster farm," was fully described during the trial. The operation begins with the purchase of "seed," which are baby oysters (usually one-quarter of an inch or smaller) which have attached themselves to a piece of shell or cultch. Once the baby oyster attaches itself to the cultch, it ceases to be a free-moving animal. The seed is then planted by one of the three following methods: (1) the cultch are broadcast onto the bottom of the bay in certain marked areas, known as oyster beds; (2) the cultch are placed in wooden or plastic trays which are suspended in the bay; or (3) the cultch are strung on wires which are lowered into the bay.

Once the seeds are planted, the oysters must be cared for. The beds must be checked periodically for

[ 309 ]

predators or disease. Sometimes the tides wash trash into the beds which must be removed. As the oysters grow, the cultch must be broken apart to prevent overcrowding. Most of this work is done by divers, although plaintiff has started to use a modified spring-tooth harrow, pulled by a boat, to break up the cultch.

Depending on the conditions under which they are grown and the size of oyster desired, the oysters are harvested 18 to 48 months after they are planted. Those oysters grown on the bottom of the bay are harvested by a boat which drags baskets along the bottom of the bay to scoop up the oysters. When oysters grown in trays or on wires are ready to be harvested, the trays or wires are pulled from the bay with a boat-mounted crane.

After the oysters have been removed from the bay, they are taken to the culling shed, where the dead oysters are picked out and the rest are washed and broken into clusters of three. From the culling shed, the oysters go to the shucking house to be shelled. The meats are then washed in clear water to eliminate the mud and pieces of shells.

Next, the meats are graded. The last step is packing the oysters in pint, gallon or four-gallon containers.

From the above description of plaintiff's operation, it is apparent to the court that a part of plaintiff's operation involves the planting, cultivating and harvesting of oysters. This conclusion does not determine whether any of plaintiff's personal property is "inventory" eligible for the partial exemption from property tax granted by ORS 310.608. "Inventory" is defined in ORS 310.608(3) as follows:

> "As used in subsection (1) of this section, 'inventory' means *farm machinery used in the planting, cultivating, or harvesting of farm crops, all livestock* and items of tangible personal property described as materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in

trade of the taxpayer held for sale in the ordinary course of his business." (Emphasis supplied.)

The subject property (Pl Ex 1) included floats and trays, growing trays, floating platforms, stainless steel and plastic pails and tanks, an oyster washer and grading table, assorted tables and chairs, a water chlorinator, refrigeration equipment, space heaters, boats, outboard motors, a winch, and a water pump, assessed at $58,236 as of January 1, 1975.

Plaintiff alleges that the subject personal property qualifies as "inventory" under the portion of ORS 310.608(3) emphasized above (excepting the words "all livestock"). This can only be true if the subject personal property is "farm machinery" and the oysters are a "farm crop"; in short, only if plaintiff's operation is a "farm," within the meaning of ORS 310.608(3).

Thus, the court is again faced with the necessity of construing a tax exemption statute. This oft-recurring task points out one of the frailties of the written word; viz., that precision in meaning is seldom achieved, since a particular word or phrase carries different connotations to different people, particularly when personal interests are at stake.

In an attempt to avoid the application of Oregon's well-established policy of "strict but reasonable construction" of tax exemption statutes, plaintiff argued that ORS 310.608 is not truly an exemption statute. Although the court recognizes the infinite variety in the statutes relieving different kinds of personal property from taxation in whole or in part, ORS 310.608 remains, by its own terms, an exemption statute. In its interpretation, the policy of "strict but reasonable construction" must be applied. *See* the cases cited in *Emanuel Lutheran Char. v. Dept. of Rev.,* 4 OTR 410, 415-416 (1971), *aff'd,* 263 Or 287, 502 P2d 251 (1972).

A second rule of statutory construction which is applicable in this situation (and urged by the

plaintiff) is that words of common use are to be given their natural, plain and obvious meaning. *Blalock v. City of Portland et al,* 206 Or 74, 291 P2d 218 (1955). This rule of construction is meant to assist a court in giving that meaning to a particular statute which best effectuates the policy and intent of the legislature. *Holman Tfr. Co. et al. v. Portland et al.,* 196 Or 551, 564, 249 P2d 175, 181 (1952), *rehearing denied,* 196 Or 581, 250 P2d 929 (1952). But stating the rule is not enough; it is still necessary to determine what *is* the common meaning, in a specific instance.

■ The court is of the opinion that the legislature used the terms "farm machinery," "farm crops" and "all livestock" in ORS 310.608(3) with the intention that they refer to the traditional concept of a "farm" and the equipment used to produce a crop on such a farm, and that this common concept excludes oyster farming (and, probably, other forms of aquaculture).

■■ The courts have had occasion in the past to consider the meaning of the word "farm." In *State Ind. Acc. Com. v. Eggiman,* 172 Or 19, 139 P2d 565 (1943), a worker's compensation claimant had been injured while helping to fell a tree on the defendant's property. In determining whether or not the defendant operated a "farm," employment on which was not covered by workman's compensation, the court stated: "The word 'farm' today signifies a piece of land used wholly or principally for agricultural purposes, * * *." (172 Or at 25, 139 P2d at 567.) In *Braat v. Aylett,* 273 Or 795, 543 P2d 1071 (1975), the plaintiff sought a statutory way of necessity in order to gain access to a piece of landlocked property claimed to be a farm. In determining that the property was a farm, the court adopted the following definition:

> " 'The cases disclose that a "farm" is generally defined as a body of land under one ownership devoted to agriculture, either to the raising of crops or pasture, or to the rearing of animals or both. * * *' " (273 Or at 797, 543 P2d at 1072.)

The court is of the opinion that plaintiff's oyster-raising operation does not fit within the above definitions of a "farm." Plaintiff's operation is a form of aquaculture, not agriculture. The oysters are a product of the water, from which they derive their nutrients, rather than the soil. This conclusion is not altered merely because some farming terminology (*e.g.*, planting, cultivating and harvesting) is used in describing plaintiff's operation and the oysters are referred to as a "crop." The court does not feel compelled to deviate from the traditional meaning of the word "farm" simply because modern technology adds a new meaning to the term to describe its advances. This conclusion gains support from the statement in *Just-A-Mere Farm v. Peet,* 247 Or 413, 418-419, 430 P2d 987, 989 (1967):

> "* * * Although, with the development of the selective cutting of timber, it is not uncommon to refer to timber as a 'crop,' we do not think that in common parlance the growing of trees for the purpose of producing lumber is regarded as an agricultural operation, * * *."

Also worthy of note is the decision in *Salem Nursery v. Dept. of Revenue,* 262 Or 187, 497 P2d 371 (1972), *aff'g* 4 OTR 482 (1971), wherein it was determined that nursery stock, grown in containers in greenhouses, would not qualify as shrubs growing on agricultural land. Nursery stock of this sort has a closer kinship with "farming" than oyster culture.

Plaintiff's citation of the dictionary definitions of "farm" and "crop" are not persuasive. Nor is the court swayed by plaintiff's citation of several sections in ORS chapter 509 which deal with oyster production and which use farming terminology in referring to such production. (The court notes that plaintiff's reliance on ORS chapter 509 is undermined by the fact that chapter 509 is a part of ORS's Title 42, Commercial Fishing and Fisheries. *See* specifically ORS 506.001.) The expansion of the meaning of "farm" to encompass an "oyster farm" and the meaning of "crop"

[ 313 ]

to include a "crop of oysters" does not alter the "natural, plain and obvious meaning" of those words which this court is bound to adopt. Plaintiff's counsel made an excellent presentation, of great aid to the court, but his best efforts produced no hard authority in support of plaintiff's theory, and the final steps of construction were strained.* (The legislature can speak plainly when it so intends: *Compare* ORS 508.270, exempting crab pots from property taxation.)

The court finds that plaintiff's "oyster farm" is not a "farm" within the meaning of ORS 310.608(3). Consequently, the subject personal property is not "farm machinery used in the planting, cultivating, or harvesting of farm crops" and is not eligible for the partial property tax exemption provided by ORS 310.608.

Defendant's Order No. VL 76-321 is affirmed.

The defendant is awarded its statutory costs.

---

*The equipment used in raising and processing oysters is not equated with "farm machinery" any more than oysters are included in "livestock" in the ordinary or customary use of that word. Plaintiff, although describing the oyster as a part of the animal kingdom, has not argued that the mollusk should be deemed livestock, using the word "crop" instead. However, plaintiff's position rests substantially on its testimony that the vocabulary of farming and of oyster culture are the same. Using this approach, it would appear logical to categorize oysters as livestock. This illustrates the weakness of the basic argument.