Argued July 6, affirmed July 19, 1917.

# RANEY v. STATE INDUSTRIAL ACCIDENT COMMISSION.

## (166 Pac. 523.)

**Master and Servant—Workmen's Compensation—Award of Commission—Review.**

1. The State Industrial Accident Commission not being a judicial tribunal, a re-examination of any of its final determinations by a Circuit Court is inaugurated by procedure in the nature of a writ of review, and when jurisdiction of the cause has thus been secured, it is to be tried *de novo* as upon an appeal.

**Master and Servant—Workmen's Compensation—Award of Commission—Review.**

2. Where a petition to review a refusal to award compensation is tried without a jury, the only question involved is whether the findings of fact as made by the court when supported by any evidence uphold the judgment rendered.

**Master and Servant—Workmen's Compensation—Who Liable.**

3. Where a person engaged in farming operates for himself or others any machine or agency that brings such employer automatically within the hazardous occupations, unless he has given in the manner prescribed notice that he will not be governed by the provisions of

the act, he is not immune from making to the State Industrial Accident Commission the small contributions which the law exacts from the product of business of that kind in order to create a fund as a partial compensation to the laborers who have been injured by such means.

**Master and Servant—Workmen's Compensation—Who Liable—"Hazardous Occupation."**

4.   Under Workmen's Compensation Act (Laws 1913, p. 192), Section 13, including mills within hazardous occupations, and Section 14, providing that "mill" means any plant, premises, room, or place where machinery is used, any process of machinery, changing, altering, or repairing any article or commodity for sale or otherwise, together with the yards and premises which are part of the plant, including elevators, warehouses, and bunkers, one employed by a farmer working on a silo-mill is engaged in a "hazardous occupation."

[As to meaning of "plant" as used in Workmen's Compensation Act, see note in Ann. Cas. 1917A, 323.]

**Master and Servant—Workmen's Compensation—Who Liable—Hazardous Occupation.**

5.   The fact that the operation of an ensilage cutter may have been merely incidental to farming in which the employer was generally engaged did not make the management of the mill a less "hazardous occupation."

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.   Statement by MR. JUSTICE MOORE.

This is a proceeding by Wesley Raney against the State Industrial Accident Commission and Wm. A. Marshall, Harvey Beckwith, and Carl Abrams, the members thereof, to review their action in refusing to award to the plaintiff any compensation for the loss, by accident, of his left hand.  From the record of the cause as made the trial court found, in effect, that at all the times stated the State Industrial Accident Commission was duly created by and existed pursuant to the laws of Oregon, and that the other defendants were the regularly appointed, legally qualified, and acting commissioners thereof, and, as such, were authorized to perform certain acts of a public nature; that on July 1, 1916, the plaintiff was employed by D. R. Tinnerstet, who then was engaged in cutting for a

dairyman in Tillamook County, Oregon, ensilage by means of a portable mill, the chief mechanism of which consisted of blades fastened to a cylinder, which being rapidly revolved prepared cattle feed for silo purposes; that this machinery was propelled by a belt connected with a ten-horse power gasoline engine, and when in operation the person feeding it was obliged to stand close to the blades against which he pushed the fodder with his hands; that on such day, and while plaintiff was performing the duties for which he was engaged, his hand, by accident, came in contact with the revolving knives, and was torn off at the wrist; that such injury was occasioned by violent and external means and arose out of the course of plaintiff's employment; that at the time of the accident his employer was engaged in one of the hazardous occupations specified by the statute, and he had never notified the defendants that he would not contribute to the industrial accident fund, and with the plaintiff he was subject to the provisions of that act; that within the time prescribed after the accident the plaintiff submitted the attending physician's certificate of injury and made application for the allowance of compensation therefor to the defendants, who rejected his entire claim for indemnity, including a demand for $100 expended for medical attendance and hospital dues; that within the time limited therefor the plaintiff commenced these proceedings to review such action. As conclusions of law deducible from such findings the court further found that in rejecting plaintiff's claim for compensation the defendants failed properly to consider the law and facts pertaining thereto; that the ensilage cutter was a "mill" within the meaning of that term as defined by the statute, and that Tinnerstet was then engaged in a hazard-

ous occupation as thus specified and in all respects was subject to the provisions of the act; that thereunder the plaintiff is entitled, as compensation for the injury sustained, to $25 a month for 76 months, beginning with July 1, 1916, and the further sum of $100 which he had expended for medical attendance, hospital dues, etc.; and that the order of the defendants rejecting the plaintiff's claim be reversed and a judgment entered requiring them to pay the award here made in the manner prescribed by law. A judgment having been entered in accordance therewith the defendants appeal.                          AFFIRMED.

For appellants there was a brief over the names of *Mr. J. A. Benjamin,* Assistant Attorney General, *Mr. George M. Brown,* Attorney General, and *Mr. T. H. Goyne,* District Attorney; with an oral argument by *Mr. Benjamin.*

For respondent there was a brief and an oral argument by *Mr. George P. Winslow.*

MR. JUSTICE MOORE delivered the opinion of the court.

The statute in force when this cause was initiated regulating the transfer of a claim for compensation for an injury received by a servant from the State Industrial Accident Commission to a judicial tribunal declares:

"Any employer, workman, beneficiary, or person feeling aggrieved by any decision of the commission affecting his interests under this act may have the same reviewed by a proceeding in the nature of an appeal and initiated in the circuit court of the county in which the accident occurred, or in which he resides * * and the court shall determine whether the commission has

justly considered all the facts concerning injury, whether it has exceeded the powers granted it by this act, whether it has misconstrued the law and facts applicable to the case decided. * * Upon the hearing of such an appeal the court in its discretion may submit to a jury any question of fact involved in such an appeal. The proceedings in every such appeal shall be informal and summary, but full opportunity to be heard shall be had before judgment is pronounced. No such appeal shall be entertained unless notice of appeal shall have been served by mail or personally upon some member of the commission within 30 days following the rendition of the decision appealed from and actual communication thereof to the person affected thereby": Gen. Laws Or. 1913, Chap. 112, § 32.

1, 2. The State Industrial Accident Commission not being a judicial tribunal, a re-examination of any of its final determinations by a Circuit Court is inaugurated by procedure in the nature of a writ of review. When jurisdiction of the cause has thus been secured, it is to be tried *de novo* as upon an appeal, where the facts involved may be considered and determined by a jury in the discretion of the court, thus showing that evidence may be given at such hearing. The case at bar was tried on appeal without the intervention of a jury, and hence the only question involved is whether the findings of fact as made by the court when supported by any evidence uphold the judgment rendered, which must conform to the provisions of the statute governing such a case: Annotation—Workmen's Compensation, L. R. A. 1916A, 266. At page 271 of this volume in referring to the law regulating the practice in a case of this kind it is observed:

"In general it may be said that the statutes have attempted to provide for a procedure that is simple, flexible, and speedy."

3, 4. The reason assigned by defendants for rejecting plaintiff's claim for compensation for the injury sustained by the accident is that the business in which he was engaged at the time he was hurt is incidentally connected with farming, which is an occupation not included within the hazards specified in the act under consideration. Farming is not treated in the statute as a hazardous occupation, and since the performance of agricultural work does not involve much danger of accident to life or limb, the legislative assembly omitted that class of industry from the catalogue. Where, however, a person engaged in farming operates for himself or others any machine or agency that the statute has declared brings such employer automatically within the hazardous occupations, unless he has given in the manner prescribed notice that he will not be governed by the provisions of the act, he is not immune from making to the State Industrial Accident Commission the small contributions which the law exacts from the product of business of that kind in order to create a fund as a partial compensation to the laborers who have been injured by such means. Section 13 of the act in question includes mills within the hazardous occupations to which the statute applies. Section 14 thereof as far as involved herein reads:

"In the sense of this act words employed mean as here stated, to-wit: * * Mill means any plant, premises, room, or place where machinery is used, any process of machinery, changing, altering, or repairing any article or commodity for sale or otherwise, together with the yards and premises which are part of the plant, including elevators, warehouses, and bunkers."

Section 19 of the act originally provided that all employers engaged in operating "cereal mills" should be included within class A. This section was amended

so as to prescribe the rate of contribution to be made to the State Industrial Accident Commission by employers who operated "flour, grain, chop, and feed mills": Gen. Laws Or. 1915, Chap. 271.   A text-writer in speaking of the Workmen's Compensation Act observes:

"Being remedial in character, the act should receive a broad and liberal interpretation so as to effectuate its beneficent purpose": 5 Sutherland, Dam. (4 ed.), § 1360, p. 5146.   To the same effect see also Annotation—Workmen's Compensation, L. R. A. 1916A, 215, and cases cited in note 45.

Giving such enlarged construction to the phrase "feed-mills" as referred to, it is believed the term so designated is broad enough reasonably to include an ensilage cutter as described by the trial court in its findings.   This machine was used to cut feed which was stored in a silo to furnish nourishment to cows that were kept for dairy purposes, and hence the instrument was a "feed-mill" within the express provisions of the statute and automatically rendered the operation of such machinery a hazardous occupation as specified in Section 13 of the act.

5. The fact that the operation of an ensilage cutter may have been merely incidental to farming, the business in which plaintiff's employer, D. R. Tinnerstet, was generally engaged, did not make the management of the "feed-mill" a less hazardous occupation: 5 Sutherland, Dam. (5 ed.), § 1376, p. 5185; *Wendt* v. *Industrial Ins. Com. of Washington,* 80 Wash. 111 (141 Pac. 311, 5 N. C. C. A. 790); *State* v. *Business Property Security Co.,* 87 Wash. 613 (152 Pac. 334).

The amount awarded by the court to the plaintiff as part compensation for the loss of his hand is the

exact sum prescribed by the act: Section 21, subd. 4 (f).

It follows that the judgment should be affirmed, and it is so ordered.                                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCCAMANT concur.

---

Motion to dismiss allowed July 3, rehearing denied July 24, 1917.