**PACIFIC FRUIT & PRODUCE CO. v. OREGON LIQUOR CONTROL COMMISSION et al.**

**Civil No. 217.**

District Court, District of Oregon.

Sept. 29, 1941.

176

Teiser & Keller, of Portland, Or., and Patterson & Patterson, of Seattle, Wash., for plaintiff.

Boyd & Ferris, of Portland, Or., I. H. Van Winkle, Atty. Gen. of Oregon, and Francis T. Wade, Asst. Atty. Gen. of Oregon, for defendants.

JAMES ALGER FEE, District Judge.

The complaint in this action seeks recovery of amounts paid by plaintiff for the privilege of doing business in malt syrups in the State of Oregon. There are forty-one counts in the complaint, each based upon a separate payment to the Oregon Liquor Control Commission during the period from April 25, 1934, to November 19, 1938. The forty-second count sets up that

defendants are seeking collection of like sums claimed to be due for such business transacted in the period before the repeal of this section of the statute[1] and during the months of January to March, 1939, inclusive. Defendants answered the complaint and a pre-trial conference was held. A pre-trial order was drawn in which the issues of law were set out against an appropriate factual background. Plaintiff contends that the imposition upon or collection from plaintiff of the taxes paid was in violation of the commerce clause of the Federal Constitution, Article 1, Section 8, the clause forbidding imposts or duties on imports into a state, Article 1, Section 10, and the due process and equal protection clauses, Section 1, Fourteenth Amendment. By consent of the litigants the court has tried certain issues of law, which under the facts and contentions delineated by the pre-trial order are vital to the determination of this case. These issues are (1) notwithstanding the action is filed against the Oergon Liquor Control Commission and Walter E. Pearson, State Treasurer of the State of Oregon, is the action really brought against the State of Oregon? (2) If so, has the United States District Court jurisdiction of the controversy? These issues must be dealt with separately, as to the claims in the first forty-one counts and as to the forty-second count.

It is necessary in order to make these determinations to understand the factual and legal background to the controversy.

The State of Oregon imposed a privilege tax upon any person "who, within the state of Oregon, produces, brews, ferments or manufactures an alcoholic beverage or malt beverage or malt syrup or who * * * is first in possession thereof after the completion of the act of importation into the state".[2]

The original statute for control of liquor in the state was enacted after the adoption of the Twenty-first Amendment to the Federal Constitution was declared to be an exercise of the police powers for the general welfare to prevent the recurrences of abuses associated with saloons and to eliminate the evils of unlicensed and unlawful manufacture and sale thereof.[3] The collection of revenue was not the main purpose of this act, but such provisions were only incidental.[4] The Oregon Liquor Control Commission was set up pursuant to this statute and consists of three members who serve without pay.[5] The Commission control the liquor traffic, issue licenses and generally enforce the state laws with reference to the traffic in liquor in the state.[6] They buy and sell liquor and manage the commercial transactions relating to the purchase and sale of liquor for the state.[7] The Commission collect the privilege taxes and license fees imposed by law[8] from persons liable therefor. The Commission as a body are endowed with the power to sue and the liability to suit.[9]

Walter E. Pearson was at the time of the institution of this suit the State Treasurer of the State of Oregon. He was required to pay out moneys only in accordance with statute and upon proper voucher from the general fund of the state[10] or

---

[1] This tax as to malt syrups was repealed by omission of the words relating thereto from Chapter 247, Oregon Laws 1939, amending and generally revising Chapter 447, Oregon Laws 1937. See Reed v. Dunbar, 41 Or. 509, 513, 69 P. 451.

[2] Laws Or.1935, c. 427.

[3] Chapter 17, Section 2, Oregon Laws, Second Special Session, 1933. This legislation is embodied in Oregon Liquor Control Act, Chapter 17, Oregon Laws, Second Special Session, 1933, and the Liquor Taxing Act, Chapter 46, Oregon Laws, Second Special Session, 1933; Chapters 427 and 428, Oregon Laws 1935; Chapters X, XI, Title XV, Oregon Code Supplement 1935, Sections 15-1001 to 15-1116, inc.; Chapter 448, Oregon Laws 1937; Chapter 247, Oregon Laws 1939, and now appears as amended in Chapters 1-3, inc., Title 24, Oregon Compiled Laws Annotated, Sections 24-101 to 24-315, inc. Although details have been changed, the general scheme remains. Here the original laws are cited unless a specific point is made.

[4] City of Klamath Falls v. Oregon Liquor Control Commission, 146 Or. 83, 95, 29 P.2d 564.

[5] Chapter 17, Section 4, Oregon Laws, Second Special Session, 1933.

[6] Chapter 17, Section 6, Oregon Laws, Second Special Session, 1933.

[7] Chapter 17, Section 6(a), Oregon Laws, Second Special Session, 1933.

[8] Chapter 17, Section 6(f), Oregon Laws, Second Special Session, 1933.

[9] Chapter 17, Section 5, Oregon Laws, Second Special Session, 1933.

[10] "No money shall be drawn from the treasury but in pursuance of appropriations made by law". Constitution of Oregon, Article IX, Section 4.

from moneys in the Oregon Liquor Control Commission account.[11]

Plaintiff had a large business in beer and malt syrups, a non-alcoholic commodity which plaintiff imported into the state. Plaintiff ceased doing business in beer at the first of the year 1938, but has paid all amounts due the state under the statute upon business in beer. The amounts collected from plaintiff for the privilege of doing business in malt syrups were based upon reports rendered by plaintiff and were computed at the rate of three and one-third cents per pound on all malt syrups received by plaintiff within the State of Oregon, less credit for malt syrups exported.

The statute which was in effect at all times during the period in controversy directed that the moneys collected by the Oregon Liquor Control Commission upon this tax be paid into the treasury to the account of the Commission.[12] Expenses of the Commission and liabilities of the state incurred under the statute were paid from these moneys upon warrant of the Secretary of State pursuant to claim approved by the Commission and audit.[12] Thereupon, quarterly, the balance of the money to the credit of the account of the Commission was distributed seventy-five per cent to counties of the state and twenty-five per cent to the general fund of the state.[12] Assuming that official duties established by the statute were performed, all the moneys collected by the Commission from plaintiff had been turned over and re-distributed or placed in the general fund of the state. The last payment by plaintiff was on November 19, 1938, and suit here was commenced October 23, 1939, and there were distributions December 31, 1938, March 31, June 30 and September 30, 1939.[12] The Commission own no property and have had no moneys under their control[12]

except for a short period a small revolving fund provided for administration.[13] Such taxes were "sums due to the state".[14] None of the present members of the Commission were such during the period when the payments here in issue were made. Walter E. Pearson was not State Treasurer at the time any payments were made by plaintiff to the Oregon Liquor Control Commission. The court takes judicial knowledge that Walter E. Pearson is no longer State Treasurer but has been succeeded by Leslie Scott.

The first question for determination is whether the suit is actually brought against the State of Oregon. It has long been recognized that the omission of the name of the state from the parties defendant is not the ultimate test.[15] It must be determined, then, whether any individual is here liable, and, then, whether the Oregon Liquor Control Commission or the State Treasurer are liable or, finally, whether the entire onus falls upon the State of Oregon.

As to the first point, an individual who collects taxes improperly or under an unconstitutional statute is liable therefor to the person who has paid them,[16] upon the theory that the collector has been unjustly enriched. This doctrine has even been applied where the moneys collected have been turned over to the state. No individual is beyond the law, and the authority of the sovereign is not a defense.

The agreed facts here show that none of the Commissioners now in office nor Walter E. Pearson collected or now have in their hands officially or otherwise any money collected from the plaintiff under this statute, except such as may be in the general fund of the state. No liability attaches therefor to any of the individuals involved in this suit.[17]

---

11 Chapter 46, Section 15, Oregon Laws, Second Special Session, 1933.

12 Chapter 46, Section 15, Oregon Laws, Second Special Session, 1933.

13 A fund was created in 1935 of $25,-000 "for the purpose of paying travel expenses, advances, other miscellaneous bills, and extraordinary items which are payable immediately in cash upon presentation", Chapter 428, Section 20, Oregon Laws 1935, and increased to $50,000 for the same purposes in 1937, Chapter 448, Section 25, Oregon Laws 1937, but was done away with in 1939, before suit was commenced, Chapter 247, Section 9, Oregon Laws 1939.

14 Chapter 427, Section 10, subdivision (d), Oregon Laws 1935.

15 Smith v. Reeves, 178 U.S. 436, 439, 20 S.Ct. 919, 44 L.Ed. 1140; State Highway Commission of Wyoming v. Utah Construction Company, 278 U.S. 194, 199, 49 S.Ct. 104, 73 L.Ed. 262; United Contracting Co. v. Duby, 134 Or. 1, 12, 292 P. 309.

16 54 Harvard Law Review, 1244. See Fox v. Rothensies, Collector of Internal Revenue, 3 Cir., 115 F.2d 42.

17 See United Contracting Co. v. Duby, supra, 134 Or. at page 30, 292 P. 309; Mohler v. Fish Commission, 129 Or. 302, 306, 307, 276 P. 691.

The second question is somewhat more difficult of solution. The rule as to liability of an individual as tax collector extends also to corporations. The county as a municipal subdivision of the state is charged with certain governmental and administrative functions. These functions, however, are only remotely and distantly connected with the state.[18] The county is a corporation which has the power to hold the property and money. In transactions of a business nature, it is normally treated as a private corporation. As such it is held for taxes illegally collected,[19] even though the proceeds have gone into the general fund of the state.[20]

The Oregon Liquor Control Commission is not a corporation.[21] It is a governmental or administrative body, and as such constitutes an arm or alter ego of the state itself.[22] The precedents for the erection of such commissions are numerous and long antedate state monopolies in liquor. The State of Oregon has acted through such commissions, which normally have been held to be vested with the immunity of the sovereign to suit.[23] Such bodies have been created by individual states for the purpose of protecting the state monopolies in liquor, both before and after the prohibition era.[24] Although suit may be maintained under the statute against the Commission, there was no intention to make the Commission responsible for acts of the State of Oregon or property held or used by the state, even though acting through the Commission.[25] While the Commission may sue to collect the amounts due under law and may be, perhaps, liable to suit for moneys so collected and still under their control and as yet not turned into the state treasury for re-distribution according to law, the problem here is not solved by such considerations.

Since such a suit would, therefore, interfere with the important governmental fuctions of control of liquor importation and the collection of taxes imposed thereon and is not consistent with the statutory scheme embodied in the Oregon Liquor Control Act, the words "sue and be sued" must be limited in scope.[26]

The State Treasurer in his official capacity is not liable for moneys which have been collected and re-distributed or turned into the general fund of the state.[27] The true test as to whether the suit is actually brought against the state is contained

---

[18] See William C. Popper & Co. v. Pennsylvania Liquor Control Board, D. C., 16 F.Supp. 762, 763.

[19] Tyler v. Dane County, Wis., D.C., 289 F. 843; Board of Commissioners of Jackson County, Kansas v. United States, 10 Cir., 100 F.2d 929, 936, affirmed, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313.

[20] Ward et al. v. Board of County Commissioners of Love County, Oklahoma, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751.

[21] This feature distinguishes federal corporations, such as Home Owners Loan Corporation, McAvoy v. Weber, 198 Wash. 370, 88 P.2d 448; Reconstruction Finance Corporation, Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 390–392, 59 S.Ct. 516, 83 L. Ed. 784; and Federal Housing Administration, Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724, which although instrumentalities, are launched in commercial and business transactions almost exclusively and the intention is that these shall be not less amenable to judicial process than a private enterprise.

[22] Even if it were a corporation it would not be liable if it were a "direct governmental agency of the state". See Miller Supply Co. v. State Board of Control, 72 W.Va. 524, 78 S.E. 672, cited in United Contracting Co. v. Duby, supra, 134 Or.

at pages 21, 22, 292 P. at page 315.

[23] United Contracting Co. v. Duby, supra; Mohler v. Fish Commission, supra. It must be noted that the power to sue and be sued was not extended to either of the commissions involved in these cases.

[24] State Dispensary Commission of South Carolina v. Wilson Distilling Company [Murray v. Wilson Distilling Co.], 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742; Carolina Glass Company v. State of South Carolina, 240 U.S. 305, 36 S.Ct. 293, 60 L.Ed. 658.

[25] William C. Popper & Co. v. Pennsylvania Liquor Control Board, supra; United Contracting Co. v. Duby, supra, 134 Or. at pages 21, 22, 292 P. 309; Miller Supply Co. v. State Board of Control, supra.

[26] See Federal Housing Administration, Region No. 4 v. Burr, supra, 309 U.S. at page 245, 60 S.Ct. 488, 84 L.Ed. 724.

[27] Smith v. Reeves, supra. If, on the other hand, the individual who was State Treasurer had on his hands funds which he had been warned were illegally collected and which had not been turned into the state treasury, he could be held. Atchison, Topeka & Santa Fe Railway Company v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas.1913C, 1050.

in the question of where the weight of the judgment rendered will fall. Here the Oregon Liquor Control Commission has no funds of its own, although there was at one time a small revolving fund to permit proper administration of the law.[28] The State Treasurer has no authority to pay out funds of the state except in accordance with law, and upon proper warrant and audit. The case must be differentiated from that in which a Commission has complete control over funds deposited in its name in the state treasury.[29] There is no method here by which a judgment could be paid except out of the state treasury.[30] Since no individual before the court can be held liable, and since both the State Treasurer and the Oregon Liquor Control Commission are agencies of the state itself, whose acts are controlled by law, and since any judgment rendered must be paid out of the general funds of the State of Oregon, this suit is, in fact, brought against the State of Oregon itself.

Since the state is the real party in interest, the problem of jurisdiction of this court arises. Inasmuch as suit against the Commission is expressly authorized, there may be an implication that the State of Oregon has waived immunity. Statutes authorizing suits against a sovereign are, however, strictly construed.[31]

There are strongly supporting indicia that there was no intention of allowing the general fund of the state to be mulcted in a suit against its officers or instrumentalities. In this case administrative machinery was provided whereby improper exactions could be corrected by refund. Furthermore there are provisions for recovery against the state itself of taxes collected under an unconstitutional statute.[32] With such distinctive remedies available, the contention that the State of Oregon could otherwise be divested of moneys so collected by suits against its instrumentalities is unsound. Furthermore, no case has been cited where a state commission has ever been held liable for taxes collected by it.

However, irrespective of this proposition, the State of Oregon cannot be sued in a District Court of the United States, even if it has consented to suit. There is no diversity of citizenship, because a state is not a citizen.[33] The Eleventh Amendment to the Federal Constitution forbids the maintenance by a citizen of another state of an action against a state, even if the state sued be shown to have infringed fundamental clauses of that document to the injury of the citizen.[34]

By the forty-second count, a different problem is raised. Unquestionably, this is a claim against the Commission as presently constituted, based upon the threatened irreparable injury which might be caused by their enforcement of the statute.[35] There is no barrier here, on the

---

[28] Where the state had provided an administrative fund for an agency it was held that since the judgment if granted would expend itself upon the state, the immunity of sovereignty was available. Ex parte State of New York, No. 1, 256 U.S. 490, 500, 501, 41 S.Ct. 588, 65 L.Ed. 1057.

[29] Butterfield v. State Industrial Accident Commission, 111 Or. 149, 223 P. 941, 226 P. 216. This case is distinguished in United Contracting Co. v. Duby, supra, 134 Or. at pages 11, 18, 292 P. 309, upon the ground that the State Accident Commission had a fund of its own somewhat remotely removed from the general fund of the state, out of which a judgment could be satisfied, although deposited in the state treasury.

[30] "The judgment must be satisfied out of public funds". State of North Dakota v. National Milling & Cereal Co., Inc., 8 Cir., 114 F.2d 777, 778. "The * * * judgment [sought] would expend itself upon the people of the state." Ex parte State of New York, No. 1, supra [256 U.

S. 490, 41 S.Ct. 591, 65 L.Ed. 1057]. "The funds out of which the plaintiffs seek payment belong to the state and are in the possession of its treasurer." United Contracting Co. v. Duby, supra, 134 Or. at page 27, 292 P. at page 317.

[31] Dunnuck v. Kansas State Highway Commission, D.C., 21 F.Supp. 882; State of North Dakota v. National Milling & Cereal Co., Inc., supra.

[32] Chapter 337, Oregon Laws 1931.

[33] State Highway Commission of Wyoming v. Utah Construction Company, supra, 278 U.S. at page 199, 49 S.Ct. 104, 73 L.Ed. 262; Dunnuck v. Kansas State Highway Commission, supra.

[34] Missouri v. Fiske, 290 U.S. 18, 26, 54 S.Ct. 18, 78 L.Ed. 145.

[35] Mississippi Railroad Commission v. Illinois Central Railroad Company, 203 U.S. 335, 340, 27 S.Ct. 90, 51 L.Ed. 209; Reagan v. Farmers' Loan & Trust Company, 154 U.S. 362, 14 S.Ct. 1047, 38 L. Ed. 1014; Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819.

ground that the action is against the state. The action is against the association of officers known as the Oregon Liquor Control Commission.[36]

However, there are no facts stated in the pre-trial order which indicate that any damage will be done, if the Commission attempt to collect these amounts. It is not shown that there is any license which can now be cancelled or any property which can now be seized. The plaintiff apparently has a good defense under Oregon Liquor Control Commission v. Anderson Food Markets.[37] Besides, the statute has been amended so as to eliminate the tax upon the privilege of doing business in malt syrups. It is doubtful if such taxes under a statute which has been repealed without a saving clause can be collected where the plain intention was to abandon this form of revenue. There are no facts agreed nor issues presented in the pre-trial order which indicate any disposition upon the part of defendants or either of them to attempt collection.

Since this last count is based on the substantive law of equity, it is doubtful that plaintiff comes into court with clean hands. Realistically considered, plaintiff is not burdened with the tax. Unless other facts were shown, the court must believe that the ultimate consumer, not the plaintiff, has and will pay this tax, if collected.

The court finds that the State of Oregon is the real party in interest, and this court has no jurisdiction of the action as to the first forty-one counts. The court holds that there is no ground for relief upon the facts and issues of the pre-trial order upon the claims set up in the forty-second count.

Appropriate findings and conclusions may be prepared.

---

[36] Prout v. Starr, 188 U.S. 537, 23 S. Ct. 398, 47 L.Ed. 584, a suit against a Commission and not against the individual members to enjoin illegal action sustained against the contention that the state was the real party in interest; KVL, Inc., v. Tax Commission of Washington, D.C., 12 F.Supp. 497.

[37] Oregon Liquor Control Commission v. Anderson Food Markets, Inc., 160 Or. 646, 87 P.2d 206. This case does not hold the statute under which this tax was authorized unconstitutional, but places the burden of proof on the Commission as to excepted uses. It would be impossible from a practical viewpoint to make collections from an unwilling importer under this ruling.