Argued September 7; affirmed September 28, 1943

# BROWN ET AL. *v.* UNDERWOOD LUMBER CO.

### (141 P. (2d) 527)

Before Bailey, Chief Justice, and Belt, Rossman, Kelly, Lusk, and Brand, Associate Justices.

*Arthur I. Moulton,* of Portland (Moulton & Davis, of Portland, on the brief) for appellants.

*E. K. Oppenheimer,* of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, and Forrest E. Cooper, of Lakeview, on the brief) for respondent.

BELT, J. This is an action brought under the Employers' Liability Act (§§ 102-1601 et seq. O.C.L.A.) to recover damages sustained by surviving children on account of the death of their father, alleged to have been caused through the negligence of the defendant Underwood Lumber Company. Brown, who was employed by the Warner Mountains Lumber Company as a scaler, was killed when a log rolled off a truck as it was being loaded thereon.

The Underwood Lumber Company challenges the right of the plaintiffs to maintain this action for the reason that, at the time of the accident, both Brown's employer and it were subject to the provisions of the Workmen's Compensation Act (§§ 102-1701 et seq. O.C.L.A.), had joint supervision over the premises where loading operations were carried on, and were

engaged in the common enterprise of a logging operation. It is conceded that the Underwood Lumber Company was operating under the Workmen's Compensation Act and duly made contributions to the state industrial accident fund. It is also admitted that the Warner Mountains Lumber Company had not given notice to the State Industrial Accident Commission of its election not to contribute to said fund. Plaintiffs contend that the Warner Mountains Lumber Company was not subject to the Workmen's Compensation Act as Brown, at the time of his death, was not engaged in a logging operation within the meaning of the act defining hazardous occupations. Plaintiffs assert that Brown was employed solely as a scaler for the Warner Mountains Lumber Company to determine the amount of timber sold by it to the Underwood Lumber Company, which timber was being loaded on the trucks at the "landing" in the woods.

The trial court, after findings of fact and conclusions of law, entered judgment dismissing the action. Plaintiffs appeal.

■ The vital questions are: Was the Warner Mountains Lumber Company, at the time Brown was killed, engaged in a logging operation? If it was not so engaged, the Workmen's Compensation Act would have no application and it would have been erroneous to dismiss the action. If the Warner Company was, at such time, engaged in a logging operation it would have been subject to the Workmen's Compensation Act and plaintiffs, since they seek to recover damages, not against their employer but against a third party, could not maintain the action if both companies were then and there acting in furtherance of a common enterprise and the party causing the injury had joint supervision

and control over the premises where the injury occurred. To preclude plaintiffs from prosecuting this action under the Employers' Liability Act against defendant, it must be established: (1) That the Warner Mountains Lumber Company and the Underwood Lumber Company were both subject to the provisions of the Workmen's Compensation Act; (2) that both companies were engaged in the common enterprise of logging; and (3) that the Underwood Lumber Company had joint control and supervision with the employer of Brown over the premises in question.

It is clear that if the Warner Company was engaged in a logging operation it would automatically be subject to the Workmen's Compensation Act since no notice was given by it to the State Industrial Accident Commission of its election not to contribute to the fund: § 102-1721 O.C.L.A.; *Middlebusher v. State Industrial Accident Commission,* 147 Or. 459, 34 P. (2d) 325; *Peterson v. State Industrial Accident Commission,* 140 Or. 326, 12 P. (2d) 564. Logging or lumbering is one of the operations enumerated in subsection (c) of § 102-1725 O.C.L.A. as a hazardous occupation covered by the Workmen's Compensation Act.

.The defendant Underwood Company relies upon the following provisions of § 102-1752 O.C.L.A.:

"If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death result from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person; provided, however, that no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was

an employer subject to this act. 'Premises', as used in this section, shall mean the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.''

The record discloses that the Warner Company was the owner of a large tract of timber in Lake county, Oregon. It sold about one half of its timber to the Underwood Company which operated a sawmill approximately 26 miles from the landing where the logs were loaded into trucks to be transported to the mill. Under the contract of sale, the vendee was granted the license to cut and remove the timber. It was provided therein that the scaling should be done by a scaler employed by the vendor ''at the landing or loading place in the woods where the logs are loaded on trucks or other means of conveyance to the mill * * *.'' The landing was on land owned by the Warner Company. The contract further provided, among other things, that:

''The rights of way granted hereunder shall be non-exclusive. * * *

''Payment for all logs shall be made the 15th day of the month following that in which they shall be placed upon the landing and payments * * shall be determined * * as of the first of the month following that in which the logs are placed on the landing. * * *

''All timber covered hereunder shall remain at all times the property of Warner until Warner shall have received payment therefor. * * *

''Underwood shall not be required to cut timber from logged over areas within the lands embraced in this agreement but shall cut all timber adjacent to logged over areas. A more specific delineation

of such logged over areas will be made on the ground by the parties hereto at the first possible opportunity and shall be embraced in an agreement supplementary hereto."

When the timber was felled in the woods it was dragged by caterpillar tractors to the "landing" and then immediately loaded onto the trucks. The scaler was obliged to be in close proximity to the logs as they were loaded onto the trucks by means of donkey engines, cables, blocks, and swing booms, and was, as alleged by plaintiffs, "exposed to the risks and hazards thereof." When Brown scaled the logs as they were being loaded, he also signalled from time to time to the loader employed by the Underwood Company the footage of the logs, in order that the trucks would not be overweight in violation of the rules of the Public Utilities Commission. The evidence showed that it was the general practice and custom for scalers thus to signal loaders during such "hot log operations." A permanent record was made by the scaler as to the footage of the logs loaded, with the original sheet being furnished to the Underwood Lumber Company. In addition thereto, "for the purpose of controlling the size of loads", the scaler gave to the truck driver a separate list showing each individual load before he left the landing.

The Warner Mountains Lumber Company also had in its employ Walter J. Perry, an experienced logger and timber man, who had supervision over the cutting operations covered by the above-mentioned contract. In reference to his duties, Mr. Perry testified:

"A. * * * it was up to me to see that they did not cut their stumps not any excessive height; that they utilized the tops of the trees which is also

called for there; that they did not do excessive breakage; that they did not leave trees which the contract called for them cutting. * * *''

It was also his duty to run the lines to determine where the cutting operations were located and to supervise burning of brush and the removal of dangerous snags along the roadway.

■ In the light of this record, we think it can reasonably be said that the Warner Mountains Lumber Company was engaged in a logging operation and, therefore, was subject to the Workmen's Compensation Act. The scaling of logs was, under the facts of this case, an essential part of the logging operation. As said in *Peterson v. State Industrial Accident Commission,* supra:

> ''* * * the employee that fells timber to be cut into logs is engaged in a logging operation, although that may be his only contribution to the logging business; and so with the bucker, swamper, et cetera. * * *''

Indeed, Clark, president and general manager of the Underwood Company, testified that, in the event Brown was not there, ''as a scaler'', ''We would have to scale them ourselves.'' The scaler was subjected to all the risks and hazards of the loading operations accomplished by power-driven machinery. Undoubtedly, he was engaged in a hazardous occupation.

■ It is the nature and character of the employee's work, while acting within the scope of his employment, that determines the classification of the employment under the statute. The mere fact that the principal business of the Warner Mountains Lumber Company was buying and selling timber is not conclusive so far as determining the question as to whether it was, at

the time in question, subject to the act. *Hardenbrook v. State Industrial Accident Commission,* 148 Or. 661, 38 P. (2d) 696; *Bates v. Shaffer,* 216 Mich. 689, 185 N.W. 779. The principal business of an employer may be non-hazardous but if it departs therefrom and engages in a hazardous occupation, so declared by the Workmen's Compensation Law, it is subject to the act. In the Hardenbrook case, the principal business of the Western Motor Transportation Company was the transportation of apples by truck from Hood River to Portland. An electric conveyor was used in loading the apples onto the trucks from the plant at Hood River. An employee of the transportation company operated the electric switch that controlled the conveyor. Hardenbrook, the plaintiff, was crushed between the boxes loaded on the truck and the line of boxes moved by the conveyor. The court, in sustaining compensation for the injured workman, said:

"It is conceded that the trucking business is not one of the hazardous occupations enumerated in the Workmen's Compensation Law * * *.

* * * * * * *

"* * * However, when the truck company departed from its general line of business and so changed the character of plaintiff's employment as to subject him to dangers involved in the use of power-driven machinery under the control of a fellow employee, it can no longer be said that the business or work in which it was engaged was non-hazardous."

Having concluded that Brown, in scaling the logs, was taking part in a logging operation, it seems clear that his employer had joint supervision and control over the premises in question and was engaged in the common enterprise of logging.

■ Appellants rely strongly on *Middlebusher v. State Industrial Accident Commission,* supra, wherein it was held, under the particular factual situation of the case, that a scaler of logs was not engaged in a logging operation and his employer was not, therefore, subject to the Workmen's Compensation Law. It certainly was not the intention of the court to hold, as a matter of law, that a scaler, under all factual situations, would not be engaged in a logging operation. We know, as a matter of common sense, that ordinarily scaling is an important part of a logging operation.

In the Middlebusher case, the logs were scaled on the ground where the trees had been felled and cut into logs. It was done solely for the benefit of the vendor. The scaling was remote from the actual logging operations and it was not a hazardous occupation. Middlebusher took no part in controlling the actual loading of logs as was done by Brown in the instant case. While there is undoubtedly language in *Middlebusher v. State Industrial Accident Commission,* supra, that supports the contention of appellants, the decision must be read in the light of the particular facts therein under consideration. When so considered, we think *Middlebusher v. S. I. A. C.,* supra, is not controlling here.

Underwood Lumber Company is entitled to the protection of the Workmen's Compensation Act. It follows that the judgment of dismissal is affirmed.