Submitted on motion for continuance January 18, denied January
26, argued January 19, affirmed February 9, 1955

# BENNETT *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

279 P. 2d 655
279 P. 2d 886

*Robert Y. Thornton,* Attorney General, and *Ray H. Lafky,* Assistant Attorney General, of Salem, for the motion.

*Anderson, Franklin & Landye,* of Portland, contra.

LUSK, J.

The attorney general, appearing for the respondent, State Industrial Accident Commission, moved for a continuance of the oral argument of this case on the ground that Mr. Ben Anderson, of the firm of Anderson, Franklin & Landye, who are attorneys of record for the appellant, is a member of the legislative assembly and in his representation of the appellant is acting in contravention of Art. XV, § 7 of the Constitution, which reads:

"No state officers or members of the legislative assembly shall directly or indirectly receive

a fee, or be engaged as counsel, agent, or attorney in the prosecution of any claim against this state.''

The motion was denied on January 19, 1954, when the case was called for hearing, with the announcement that an opinion would be rendered later.

The action was filed in the Circuit Court as an appeal from the rejection by the State Industrial Accident Commission of plaintiff's claim for compensation for disability caused by an industrial accident. The trial resulted in a judgment of nonsuit from which plaintiff has appealed to this court. It is plain that Mr. Anderson is engaged as an attorney in the prosecution of plaintiff's claim. The question is whether the claim is one against the State of Oregon within the meaning of the foregoing constitutional provision. In our opinion it is not. In *Butterfield v. S.I.A.C.*, 111 Or 149, 223 P 941, 226 P 216 (1924), we held that an appeal in this class of cases should not be taken by the state but only by the commission, as provided by statute. The attorney general there contended that the state was the real party in interest, but we said ''The state is not a party to cases initiated before the Industrial Accident Commission''. We said further that the immunity of the state from suit ''does not obtain when an agency of the state is a party''. This latter statement was erroneous, as Mr. Justice ROSSMAN pointed out in *United Contracting Co. v. Duby,* 134 Or 1, 11, 13, 292 P 309 (1930). In that case it was held that a suit arising out of contract against the State Highway Commission was a suit against the state and could not be maintained. A similar decision is *Mohler v. Fish Commission,* 129 Or 302, 276 P 691. See 81 CJS 1311, 1312, States § 216. The basis of the holding in the United Contracting Co. case is that the funds disbursed by the State Highway Commission are public

funds in possession of the state treasurer and any judgment rendered in that case would be paid out of such funds. The Butterfield case was distinguished on the ground that the fund administered by the State Industrial Accident Commission, and out of which a judgment would be paid, was "somewhat remotely removed from the general assets of the state available for the discharge of its common debts." It was said:

"* * * In other words, the judgment of the circuit court was payable out of funds of which the state was custodian, but possibly not owner; the funds had been gathered not for the general enrichment of the state but for the benefit of injured contributing employees."

The distinction was noticed in the opinion of United States District Judge Fee in *Pacific Fruit & Prod. Co. v. Oregon Liquor Control Commission,* 41 F Supp 175. In the United Contracting Co. case the court expressly approved the following statements of the rules for determining whether an action brought against an officer of the state is an action against the state itself.

"* * * suits against officers of a state as representing the state in action and liability, where the state, although not a party to the record, is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the defendant as an individual, could operate to control the action of the state or subject it to liability, are suits against the state. The rule does not, however, afford immunity to an officer * * *". 25 RCL 413, States § 50.

To the same effect, see 49 Am Jur 304, 305, States § 92.

"* * * It seems that the rule which forbids a suit against state officers because in effect a suit against the state applies only where the interest of the state is through some contract or

property right, and it is not enough that the state should have a mere interest in the vindication of its laws, or in their enforcement as affecting the public at large or the rights of individuals or corporations; it must be an interest of value in a material sense to the state as a distinct entity." 36 Cyc, p. 916.

The substance of the foregoing may be found stated also in 81 CJS 1312, States § 216.

At the time of the decision in the Butterfield case the state, as the opinion discloses, was a contributor to the State Industrial Accident Fund and was interested in the fund. Since then, the state's relationship to the fund has radically altered. In 1928 this court held in *Eastern & Western Lbr. Co. v. Patterson,* 124 Or 112, 146, 258 P 193, 264 P 441, 60 ALR 528, that an act of the legislature providing for the investment of $600,000 of the State Industrial Accident Fund in the construction of an office building in Salem was constitutional. In the opinion it was strongly suggested that the state had the right to recoup at least $1,000,000 of the $2,000,000 then comprising the fund. At the next ensuing session of the legislature the state, by ch 172, Oregon Laws 1929, disclaimed all interest in the fund. This act, after reciting that a question had arisen as to whether the State of Oregon had any proprietary interest in the fund, that the state had made no financial contributions thereto since July 1, 1923, since which time the fund had been maintained entirely by contributions of employers and employees in hazardous employment, and that the contributions of the state could no longer be identified, provided:

"The state of Oregon hereby does declare that the industrial accident fund created by the workmen's compensation act of Oregon, being chapter

112, General Laws of Oregon, 1913, as amended by various sessions of the legislature thereafter, be and the same is a trust fund for the uses and purposes declared in said act as so amended, and no other, and that the contributions to the said fund heretofore made by the state of Oregon have become an integral part of said fund and have either been expended or allocated to the catastrophe fund, rehabilitation fund or segregated accident fund, and the state of Oregon hereby does declare that it has no proprietary interest in said fund or in the contributions thereto heretofore made by said state, and hereby does disclaim any right to reclaim said contributions or any part thereof for its own use, and hereby does waive any such right of reclamation, if any it ever had, in or to any of said fund. This act shall not be deemed to amend or impair the force of said chapter 322, General Laws of Oregon, 1927, or to limit, restrict or control the investment of the sum of $600,000 of said accident fund for building purposes.''

If there is any reason for doubting the soundness of the statement in the Butterfield case that, in the then existing state of the law with respect to the interest of the State of Oregon in the State Industrial Accident Fund, an action against the commission was not an action against the state, that reason has been completely removed by the state's renunciation of any interest in the fund through the enactment of the law just referred to. It must be entirely clear today that no claim or judgment against the State Industrial Accident Commission can be paid out of any moneys belonging to the State of Oregon or affect ''an interest of value in a material sense to the state as a distinct entity.'' An action against the commission is in effect a proceeding to have a certain portion of a trust fund administered by the commission but in which the state has no interest, appropriated to the satisfaction of an

injured employee's claim for compensation under the provisions of the Workmen's Compensation Law. It is not an action against the state.

The question is not one of propriety or policy, but of legal interpretation. We have found no cases construing a constitutional provision similar to Art. XV, § 7, but we know of no reason why the principles established by the decisions in cases where the immunity of the state from suit is involved should not be controlling upon the question now before us. It is our opinion, therefore, that a workman's claim for compensation under the Workmen's Compensation Act is not a claim against the state, and that Art. XV, § 7 of the Constitution is not a bar to a member of the legislative assembly representing the claimant as his attorney.

ON THE MERITS

*B. Richard Anderson,* Newport, argued the cause for appellant. On the brief were Anderson, Franklin & Landye, Portland.

*Ray H. Lafky,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Roy K. Terry, Assistant Attorney General, of Salem.

Before WARNER, Chief Justice, and ROSSMAN, LATOURETTE and PERRY, Justices.

PERRY, J.

For matters of convenience, the defendant will be designated in this opinion as the commission.

The plaintiff was injured on the 18th day of September, 1951. Thereafter he filed a claim with the

defendant commission, which claim was denied by the commission on the 8th day of February, 1952. On October 20, 1952, the plaintiff filed this action in the Circuit Court of Multnomah County, and at the close of plaintiff's case the trial court sustained the defendant's motion for involuntary nonsuit. From this ruling the plaintiff appeals.

The plaintiff alleged, and the facts show, that during plaintiff's leisure time (when he had other employment), and on occasions when plaintiff had no other occupation, he was employed by one Arthur Clow as a general handy man. Mr. Clow would hire plaintiff on an hourly pay basis for various handy man jobs, such as, mowing the lawn, vacuuming the house, washing the windows, and mopping and cleaning the basement of his residence; he also, as the owner and operator of several apartment houses in the city of Portland, would, from time to time, hire the plaintiff on an hourly basis to do handy man work in and about the apartments. On the 18th day of September, 1951, the date of the claimed injury, Clow had employed the plaintiff on an hourly pay basis of sixty cents an hour for the purpose of cleaning and rust proofing the roof gutters on his private residence, Clow furnishing the necessary ladder, materials, and equipment; and on that date, while engaged in cleaning out the roof gutters, plaintiff fell from the ladder and received the injuries for which he seeks compensation.

It is the contention of the plaintiff that at the time of the accident both the plaintiff and his employer were engaged in a hazardous occupation as contemplated and encompassed in the Workmen's Compensation Law of the state of Oregon.

The commission urges that a home owner engaged in repairing his own residence is not "an employer

engaged in a hazardous occupation" within the contemplation of the act. Subsection 5, ORS 656.084, provides that "the construction, repair, alteration, painting, moving or demolition of buildings, bridges or other structures" is a hazardous occupation.

The sole question for our determination is, when a home owner causes repairs to be made upon his own residence is he then engaged in a hazardous occupation?

The plaintiff argues that whether or not the employer is engaged in a hazardous occupation is not determined by an employer's general line of business, but is determined by the type of work carried on for the employer by the employee at the time of the injury, citing *Raney v. State Industrial Acc. Comm.*, 85 Or 199, 166 P 523; *Peterson v. State Ind. Acc. Comm.*, 140 Or 326, 12 P2d 564 (which case was tacitly overruled by this court in *State Ind. Acc. Com. v. Eggiman*, 172 Or 19, 139 P2d 565); *Hardenbrook v. State Ind. Acc. Comm.*, 148 Or 661, 38 P2d 696; *Brown v. Underwood Lumber Co.*, 172 Or 261, 141 P2d 527; *McLean v. State Ind. Acc. Comm.*, 189 Or 405, 221 P2d 566.

The gist of the above cited cases is to the effect that the employer may have a regular or usual occupation which is nonhazardous, and also be engaged in a hazardous occupation, and the employees working in the hazardous occupation come within the protection and terms of the Act. It must be noted, however, that in each of the above cited cases the hazardous work of the employee alone will not bring the workman under the Act, unless the work is in conjunction with a hazardous occupation then being engaged in by the employer.

■ The preamble to the Workmen's Compensation Law, ORS 656.004, defines in general terms the purpose of the Act, which is the protection of workmen in the "various industrial enterprises" carried on within the

state. As to employers, the Act, ORS 656.022, provides, "all persons engaged as employers in any of the hazardous occupations", and thereafter proceeds to set forth those occupations deemed hazardous. The various hazardous occupations therein referred to are, therefore, industrial enterprises.

No cases are cited by the plaintiff, and we have found none, which hold that the repair of one's own dwelling is an industrial occupation. See *Eichholz v. Shaft,* 166 Minn 339, 208 NW 18; *Craine v. Department of Labor and Industries,* 19 Wash2d 75, 141 P2d 129.

3. In our opinion, the repair of a private residence for one's personal use is for the convenience and enjoyment of its owner and resident, and cannot by even the most liberal construction be considered as an industrial occupation within the terms of the Act. *State v. Cooper,* 205 Minn 333, 285 NW 903, 122 ALR 727.

It is perhaps unfortunate that the employment alone of the workman, when hazardous, does not bring him within the spirit of the Act, for when he is injured, his injuries are not less serious, and the economic burden upon himself and upon the people of the state is as great as though his injury came within the confines of the Act. However, who shall and who shall not be brought within its terms is a matter for legislative determination, not the courts.

The judgment of the trial court is affirmed.