Argued September 21, remanded with instructions
November 16, 1970

WESTFALL, *Appellant, v.* TILLEY,
*Respondent.*
476 P2d 797

*Richard T. Kropp*, Albany, argued the cause for appellant. With him on the brief were Emmons, Kyle & Kropp, Albany.

*Clifford A. Allison*, Stayton, argued the cause for respondent. On the brief were Murley M. Larimer and Gehlen & Larimer, Stayton.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Claimant filed for an on-the-job injury allegedly suffered in covered employment. The hearing officer, both after the original hearing and a rehearing held pursuant to order of the Workmen's Compensation Board, ruled that he was a covered employe under the Workmen's Compensation Act. The Workmen's Compensation Board on review held that claimant's employer was a farmer with respect to all his activities within the meaning of the Workmen's Compensation Act and that, therefore, the work claimant was doing when injured was incidental to farming. Accordingly it rejected the claim. On appeal therefrom the circuit court affirmed the order of the board. Claimant appeals.

The employer-respondent in 1967, the year of the alleged injury, owned and operated Tilley Farm Service, a custom soil fumigating and weed spraying business. Mr. Tilley, who was licensed as a fumigator by the Oregon State Department of Agriculture,

started this business in 1965. The business name, Tilley Farm Service, was carried on his fumigating and spraying equipment, and it was so listed in the Albany telephone directory. In addition, the Salem Capital Press, the Santiam Soil and Water Conservation District and the Linn Soil and Water Conservation District newspapers were used to advertise the respondent's fumigating and spraying business.

In 1967, Tilley Farm Service performed custom work on contracts covering about 4,000 acres for approximately 50 farmers, 95 per cent of whom lived within a ten-mile radius of Jefferson, Oregon. Within this geographical area respondent had a virtual monopoly of the work. However, Tilley Farm Service on occasion did custom work throughout the Willamette Valley. In that year it applied approximately $50,000 worth of chemical, netted $6,000, and had at least $20,000 invested in equipment for its special needs alone. Two-way radio installations were installed in all Tilley Farm Service vehicles.

In addition to the respondent's soil fumigation and spraying business, he owned 52 acres of farm land. Forty-four acres were rented out in the year in question. He used the remaining eight acres to grow lily bulbs. The net proceeds realized from the lily bulb operation were divided equally between Mr. Tilley and his father, from whom he was buying that land. The respondent and his father also farmed approximately 250 acres owned by the father. Although the father farmed under the name of Tilley and Son, the respondent did not share in the proceeds from his father's farming operation on a partnership basis but was paid a salary.

Thus respondent, Glen Tilley, was involved in three business operations functioning simultaneously: his soil fumigating and spraying business, the joint bulb farm operation, and his salaried work on his father's farm. Six thousand dollars of respondent's $12,000 net income for 1967 resulted from the Tilley Farm Service business, while the remaining $6,000 resulted from the respondent's other farming activities, including the work he did for his father on the latter's farm, and the lily bulb farming.

The employes hired by the respondent worked in the lily bulb operations and in the soil fumigating and spraying business. On occasion they also worked on his father's farm. Thus an employe of the respondent was in fact shared in three different areas of services: the lily bulb production, his father's general farming operations, and Tilley Farm Service, his own wholly owned soil fumigating and spraying business. Over a year's period respondent's employes spent approximately 50 per cent of their employment time working for Tilley Farm Service, and the remaining 50 per cent was divided between respondent's bulb operation and the farming operation conducted by Roy Tilley, respondent's father. Glen Tilley testified the four employes were, if anything, doing more custom work than they were farming.

In 1967, the claimant was referred to Tilley Farm Service by the Oregon State Employment office in Albany because Tilley Farm Service needed a man who could drive a tractor and fumigate. He was hired at $1.50 per hour. Claimant worked in the lily bulb fields his first day and the following day. On his third day, Tilley Farm Service began custom soil fumigation and spraying services on contract for two ranchers

north of Salem. Claimant and Glen Tilley actually did the work. They worked straight through and did not finish the job until 3 a.m. of the fourth day. We note this work was done many miles from respondent's farm. The appellant did not work the rest of that day and reported back to Glen Tilley at his bulb farm on the next day.

After he had worked there for about an hour and a half, Glen Tilley instructed him to go over to the building where the farm and fumigating equipment were stored and repaired. This building, known as the old flax mill, served as headquarters for Tilley Farm Service, being used as its mailing address and telephone listing. The respondent instructed the claimant to remove from the bed of the truck the empty fumigant drums left over from the job Tilley Farm Service had finished on the prior day. To do so he had to shift two unused drums remaining from that job. After that he was supposed to pick up 14 drums of chemicals normally used in the Tilley Farm Service business from a business house in Hubbard. Seven of those full drums were in fact subsequently used on a Tilley Farm Service custom job and the other seven on Mr. Tilley's own farming operations. While so engaged, and before the unloading of the truck was completed, claimant sustained the injury which gave rise to this claim.

It is conceded that claimant was injured in the course of his employment in October 1967, which was in the period during 1967 when the 1965 Workmen's Compensation Act was not applicable to farming. *Brennan v. Schmidt Bros. Farms,* 3 Or App 46, 471 P2d 819 (1970), therefore, does not apply here. This claim is governed by the former Act.

ORS 656.090, then in force, declared that "Farming, and all work incidental thereto, is a nonhazardous occupation." A workman employed in activity defined as farming by that section was not covered for injuries sustained in such work. The question thus presented is whether claimant was engaged at the time of his injury in the then nonhazardous occupation of farming. It is conceded that if he was so engaged, he is not covered; otherwise he is. It is clear from the evidence that claimant was working in the business of Tilley Farm Service at the time of his injury. The hearing officer so found. We agree. The board concluded that the work of Tilley Farm Service was an activity incidental to farming and that Glen Tilley, the employer, was therefore engaged "in only one occupation"— farming. *Babb v. Lewis*, 244 Or 537, 419 P2d 423 (1966); *Beswick v. S.I.A.C.*, 248 Or 456, 435 P2d 461 (1967).

*Babb v. Lewis*, supra, was a case involving a tavern employe cut while preparing food served as an incidental part of the tavern business, itself an exempt occupation. The court there pointed out:

"The employer's occupation governs the status of the employee, *Butler v. State Ind. Acc. Com.*, 212 Or 330, 318 P2d 303, and services rendered which are considered as an incidental part of the employer's primary occupation are insufficient to enlarge his general occupation, *Manning v. State Ind. Acc. Com.*, 234 Or 207, 380 P2d 989." 244 Or at 540.

In *Beswick v. S.I.A.C.*, supra, a case involving the pilot of a commercial aircraft, then an exempt occupation, killed while flying a paying passenger on a fire observation mission, the court said:

"* * * As far as the purposes of the statute were concerned, the business of the passenger did

not substantially change the business of the pilot. Neither the pilot nor the employer was engaged in the business or occupation of fighting fire." 248 Or at 459.

Respondent urges the rule of these cases is controlling here. We disagree. Here the employer was engaged in two entirely separate businesses: one, farming, conducted on his own lily bulb farm; the other a custom service business conducted on a contract basis for a large number of customers on their land which might be located anywhere in the Willamette Valley.

In *Raney v. State Industrial Acc. Comm.*, 85 Or 199, 166 P 523 (1917), the court early recognized that a farmer could even on his own land be engaged in more than one activity, one of which was deemed hazardous, and the other not. The court said:

"* * * Where, however, a person engaged in farming operates for himself or others any machine or agency that the statute has declared brings such employer automatically within the hazardous occupations, * * * he is not immune from making to the State Industrial Accident Commission the small contributions which the law exacts from the product of business of that kind in order to create a fund as a partial compensation to the laborers who have been injured by such means. * * *" 85 Or at 204.

In *Bennett v. State Ind. Acc. Com.*, 203 Or 275, 279 P2d 655, 279 P2d 886 (1955), the court reiterated this view when it summarized a long line of Oregon cases:

"The gist of the above cited cases is to the effect that the employer may have a regular or usual occupation which is nonhazardous, and also be engaged in a hazardous occupation, and the employees working in the hazardous occupation

come within the protection and terms of the Act. It must be noted, however, that in each of the above cited cases the hazardous work of the employee alone will not bring the workman under the Act, unless the work is in conjunction with a hazardous occupation then being engaged in by the employer." 203 Or at 283.

In *Bos v. Ind. Acc. Com.*, 211 Or 138, 315 P2d 172 (1957), the court considered a case where the employer was engaged 95 per cent in a hazardous occupation and five per cent in farming. The workman was hurt in the farming work. The court said:

"We hold that the court did not err in holding that * * * [the employer] was engaged in two separate occupations, one hazardous and the other, farming. * * *" 211 Or at 143.

It then went on to say:

"* * * [I]n view of the oft repeated rule requiring that the Workmen's Compensation Act be given a liberal construction in favor of the workman, and particularly in borderline cases, we are constrained to hold that plaintiff was employed in a hazardous occupation, and that the small portion of his time spent in farming work was merely incidental thereto. ORS 656.022(4); *Livingston v. State Industrial Accident Commission*, 200 Or 468, 266 P2d 684. Such a liberal construction of our statutes in the case at bar will accomplish a result which will be in harmony with the rule generally applied in other states." 211 Or at 146.

Here the claimant did work in both covered and exempt employment. 1A Larson, Workmen's Compensation Law 946-47, § 53.40 (1968), states:

"§ 53.40 Alternating farm and nonfarm work

"The second category of troublesome cases is that which involves employees who go from one class of work to another. Here, as in the other spe-

cific exemptions, it is impractical to construe the act in such a way that employees and employers dart in and out of coverage with every momentary change in activity. The great majority of decisions, therefore, attempt to classify the overall nature of the claimant's duties, disregarding temporary departures from that class of duties even if the injury occurs during one of the departures. * * *

"Conversely, the temporary assignment of non-agricultural employees to farm work does not interrupt their compensation coverage. * * *"

See also, *Industrial Commission v. Shadowen*, 68 Colo 69, 187 P 926 (1920); *Tucker v. Newman*, 217 Minn 473, 14 NW2d 767 (1944); *Skreen v. Rauk*, 224 Minn 96, 27 NW2d 869 (1947); *Hawthorne v. Hawthorne*, 184 Neb 372, 167 NW2d 564 (1969); *Campos v. Tomoi*, 175 Neb 555, 122 NW2d 473 (1963); *In re Boyer*, 65 Ind App 408, 117 NE 507 (1917); *Hahn v. Grimm*, 101 Ind App 74, 198 NE 93 (1935).

*Berry v. Department of Labor and Industries*, 11 Wash 2d 154, 118 P2d 785 (1941), involved a wheat farmer who also operated from his farm a produce hauling business in which he transported produce of other farmers to market for a charge. An employe was hurt while working as an assistant to the employer on the latter's truck then being used to haul wheat for another farmer. The Washington Supreme Court said:

"An employer may, at one and the same time, be engaged in two distinct employments, one of which is extrahazardous and within the scope of the statute, while the other is not. * * *
"* * * * *
"* * * The hauling which he did for his neighbors had nothing to do with the growing, harvesting, or marketing of the wheat raised on his own farm. * * * To avoid being within the scope

of the act, the trucking or hauling must bear some relation to, or be in some way connected with, the operation of the farm or the disposal of its produce." 11 Wash 2d at 159-60, 162-63.

Recently, in *Heintz v. Laffee*, 2 Wash App 663, 469 P2d 203 (1970), the Washington Court of Appeals considered the case of a workman employed by a farmer who raised mint on approximately 450 acres. The farmer also operated a mint distillery. In the year in question the farmer had done custom distilling for two neighboring farmers, which included the harvesting of the mint and processing it into oil. The employe was injured while sharpening blades used in the machine which chopped the mint preparatory to working on the mint of one of the two neighbor farms. He was working in his employer's machine shop. The court held the workman was engaged in his employer's custom mint distilling business and was not engaged, therefore, in work incidental to his employer's farming activity. As such, he was covered.

■■ In determining in each case whether work done is incidental to farming within the Act, the test is the particular farming activity engaged in by that workman's own employer, not whether the work may be considered incidental to farming in general. Here the work being done by claimant at the time of his injury was not incidental to the lily bulb farming of his employer. It arose from and was a part of the separate and independent work of Tilley Farm Service.

The judgment is remanded with instruction to enter an order directing the board to accept the claim.